**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CITY OF SHREVEPORT | CIVIL ACTION NO. 15-2533[1] |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MB INDUSTRIES, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are two bankruptcy appeals filed by (1) Appellants, Steven L. Schoonover, Module X Solutions, LLC, and BKLC, LLC (collectively the "Schoonover Parties") and (2) Appellant, the City of Shreveport (the "City"), appealing the Bankruptcy Court's Order on Motions for Partial Summary Judgment denying the Schoonover Parties' Motion for Partial Summary Judgment and granting Partial Summary Judgment in favor of Hallwood Financial Limited ("Hallwood Financial") and Hallwood Modular Buildings, LLC ("Hallwood Modular") (collectively the "Hallwood Parties") ruling that MB Industries, LLC ("MBI") owned the cranes at issue and MBI's later transfer and granting of security interests in the cranes to the Hallwood Parties were perfected as a matter of Louisiana law. See Case No. 15-2533, Record Document 1-1; Case No. 15-2534, Record Document 1-1; Case No. 15-2536, Record Document 1-1. For the reasons contained in the instant Memorandum Ruling, the Bankruptcy Court's order is **AFFIRMED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Prior to 2009, J.B. Beaird Company, Inc., later Beaird Industries, Inc. and then Beaird Company, Ltd. (collectively "Beaird") were the tenants in a manufacturing facility

---

[1] On December 22, 2015, the Court consolidated the appeals from the Order on Motions for Partial Summary Judgment in Civil Action Nos. 15-2533, 15-2534, and 15-2536 into one appeal, Civil Action No. 15-2533. See Record Document 7.

constructed by the City. See Case No. 15-2536, Record Document 5-2 at 1-9. According to the Hallwood Parties, the City desired to keep Beaird from moving its manufacturing operations, so it agreed to purchase land and build the manufacturing facility. See id. The agreement between the City and Beaird was formalized by an Agreement and Lease ("1962 Lease") executed on August 2, 1962. See Case No. 15-2536, Record Document 5-3 at 1. The 1962 Lease contained the following provisions relevant to the ownership of machinery and equipment located in the facility:

   A. The City agreed to "erect, acquire, construct or install…all necessary factory, office and other buildings, equipment, machinery and other personal property necessary for the business activities."

   B. Beaird itself had the right to "install…any machinery, equipment or fixtures."

   C. The lease stated that all "equipment, fixtures, machinery and other personal property of whatever nature placed in, on or about the aforesaid premises and improvements shall be conclusively deemed to be owned by [Beaird] rather than [the City], unless purchased and placed by [the City] and marked by an appropriate tag or other device as being property of [the City]."

Id. at 10-12.

The cranes were purchased and installed in the facility during the term of the 1962 Lease. There is no evidence establishing who installed the cranes at the facility, whether the City or J. B. Beaird. The cranes are pieces of heavy equipment with wheels that, just like rail cars, "roll" on elevated runway rails mounted inside the facility buildings. See id. at 49, Affidavit of Robert E. Claybaker. The cranes are electric-powered by collector shoes that make physical contact with energized collector bars attached to the runway rails. See id. None of the cranes bear any tags or other markings identifying them as the City's property. See id. at 113.

The 1962 Lease was amended on September 24, 1991, to identify Beaird Industries, Inc. as the successor in interest. See Case No. 15-2536, Record Document 5-2 at 5. Then, on September 27, 2004, Beaird Industries, Inc. assigned its interest in the 1962 Lease to Beaird Company, Ltd. See id. at 6. The aforementioned terms of the 1962 Lease regarding ownership of equipment, fixtures, machinery and other personal property did not change with the 1991 amendment or the 2004 assignment. On May 8, 2009, Beaird Company, while still occupying the facility, filed for Chapter 11 bankruptcy relief in the Beaird Bankruptcy. See id. In its bankruptcy schedules, Beaird Company individually identified each of the cranes as personal movable property of its estate. See id. On October 23, 2009, the Beaird Bankruptcy was converted from a Chapter 11 case to a Chapter 7 case. See id. at 1504. Shortly thereafter, the Beaird Bankruptcy Trustee sold to MBI all of the Debtor's interest in its equipment and machinery, specifically including the cranes, pursuant to a court-approved bill of sale (the "Beaird Trustee Sale"). See id. at 1504-06.

After termination of the 1962 Lease, the City entered into a new lease of the facility with MBI pursuant to an Agreement and Lease dated February 18, 2009 (the "2009 Lease"). See Case No. 15-2536, Record Document 5-4 at 74. The 2009 Lease provides for an initial term through December 31, 2018. The 2009 Lease also provides that:

> "all personal property located in or at the Leased Premises or otherwise constituting part of the Leasehold Premises shall at all times during the Term of this Lease be owned by, and shall belong to Lessee. All benefits and burdens of ownership of the foregoing shall be and remain on Lessee during any Term of this Lease."

Id.

In 2011 and 2013, MBI executed separate security agreements in favor of both Hallwood Modular and Hallwood Financial encumbering all of MBI's equipment and other personal property ("security agreements") to secure a wide range of obligations from MBI to the Hallwood companies. See id. at 10-73. Financing statements were recorded describing the collateral in the Louisiana UCC Records, and the security agreements remain perfected by them. See id. at 100-113. Additionally, in the summer of 2013, MBI sold two of the cranes, both located in Bay 14 of the facility (the "Bay 14 cranes"), to MBI Leasing, LLC, the predecessor company of Hallwood Modular, for $285,000. See id. at 4. On April 10, 2014, MBI granted a Multiple Indebtedness Leasehold Mortgage, Security Agreement and Assignment of Leases and Rents to Steven Schoonover (the "leasehold mortgage") in which MBI encumbered its leasehold rights and in which MBI granted a security interest in its equipment and other personal property. See id. at 114. By Order dated March 17, 2015, the Bankruptcy Court authorized the Debtor to assume and assign its rights under the 2009 Lease to Defendant, Module X Solutions, LLC. See Case No. 15-2536, Record Document 5-2 at 13. The sole right of Module X in the cranes, if any, derives from these leasehold rights.

Mr. Schoonover filed suit in state court seeking, among other things, recognition of his security rights under the leasehold mortgage of the facility, which he claims covers the cranes as part of the leased premises. The Hallwood Parties removed the case to the Bankruptcy Court on October 29, 2014, as Case No. 14-01013. The Hallwood Parties then filed their Complaint to Determine Validity and Priority of Liens and Interests Against Property on December 31, 2014, in Case No. 14-01018, seeking a declaration against MBI, the City and the Schoonover Parties that MBI owns 40 of the cranes over which the

Hallwood Parties have valid first priority security interests and that they own the Bay 14 cranes. See Case No. 15-2534, Doc. 2-1 at 1. Bankruptcy cases Nos. 14-01013 and 14-01018 were consolidated, and the Hallwood Parties and the Schoonover Parties filed cross-motions for partial summary judgment regarding ownership of the cranes and the validity of the Hallwood Parties' security interests. See Case No. 15-2536, Record Document 5-1 at 47; Record Document 5-6 at 1. The Bankruptcy Court granted the Hallwood Parties' motion and denied those of the Schoonover Parties, the City, and MBI[2] because the 1962 Lease "conclusively deemed" Beaird as the owner of the cranes, which were later acquired by MBI. See Case No. 15-2533, Record Document 1-1. The Bankruptcy Court also held MBI's subsequent sale and granting of security rights were perfected. See id. at 15. From that order, the Schoonover Parties and the City separately appealed. See Case No. 15-2533, Record Document 1; Case No. 15-2534, Record Document 1; Case No. 15-2536, Record Document 1. On December 22, 2015, the Court consolidated the appeals into one appeal, Case No. 15-2533. See Case No. 15-2533, Record Document 7.

## LAW AND ANALYSIS

**I. Legal Standards**

**A. Standard of Appellate Review**

The district court reviews a bankruptcy court's grant of summary judgment *de novo.* See In re Ark–La–Tex Timber Co., Inc., 482 F.3d 319, 328 (5th Cir. 2007); Capital One, N.A. v. City of Alexandria, 439 B.R. 379, 385 (W.D. La. 2010) (citation omitted).

---

[2] The City and MBI adopted the Schoonover Parties' Partial Motion for Summary Judgment. See Case No. 15-2533, Record Document 3-2 at 140-143.

### B. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). A nonmovant cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

## II. Analysis

The Schoonover Parties contend the Bankruptcy Court erred in failing to apply Louisiana law correctly in its analysis of the ownership of the cranes. See Case No. 15-

2534, Record Document 8 at 26. According to the Schoonover Parties, the Bankruptcy Court should not have considered the provisions of the 1962 Lease when (1) it had expired and (2) MBI and the Schoonover Parties were never parties to the lease. See id. Instead, the Schoonover Parties argue the Bankruptcy Court should have applied La. Civ. Code art. 466 to determine whether the cranes are component parts of the facility and erred when it granted summary judgment in favor of the Hallwood Parties after recognizing there may be issues of material fact regarding whether the cranes would be considered movable property.[3] See id. at 18-26; 35-36. The Schoonover Parties also claim the Bankruptcy Court erred in (1) failing to recognize the effect of Louisiana's public records doctrine, and (2) holding that *res judicata* applies to the Sale Order entered in the Beaird Chapter 7 bankruptcy in 2009.[4] See id. at 30-35.

### A. Beaird Owned the Cranes under the 1962 Lease

The rules in the Louisiana Civil Code regarding ownership of property apply only to the extent the parties do not contract differently. The Civil Code establishes freedom of contract on all matters not forbidden by law. See Travelers Ins. Co. v. Joseph, 95-0200 (La. 06/30/95), 656 So.2d 1000, 1004, citing La. Civ. Code art. 7. The Civil Code articles governing ownership rights when one person makes improvements on another's immovable property apply only in situations where the parties do not stipulate those rights by agreement.[5] See Beckham v. Hibernia Nat. Bank, 27,638 (La. App. 2 Cir. 12/06/95),

---

[3] This is the lone issue raised by the City in its appeal. See Record Document 5 at 7-12.
[4] The Hallwood Parties seem to concede that the doctrine of *res judicata* does not apply in this matter since they do not address it in their brief. Nevertheless, the Court finds *res judicata* cannot apply because neither the Hallwood Parties nor the Schoonover Parties were a party in interest to the Beaird Bankruptcy. See In re Paige, 610 F.3d 865, 870 (5th Cir. 2010). Accordingly, this issue will not be analyzed any further.
[5] Since the City and Beaird stipulated the ownership rights in the cranes in the 1962 Lease, the Court does not need to appy La. Civ. Code art. 466 to determine whether the cranes are component parts of the facility. Therefore, the City and the Schoonover Parties' argument regarding this issue is without merit.

665 So.2d 706, 708 (citation omitted); see also Yiannopoulos, 2 La. Civ. L. Treatise, Property, § 7:40, 5th ed. 2017. The same freedom to contract applies to a contract of lease. See Capital One, N.A., 439 B.R. at 385; Carriere v. Bank of La., 95-3058 (La. 12/13/96), 702 So.2d 648, 666 (citations omitted).

Article 2695 of the Louisiana Civil Code specifically governs a lessee's rights to remove attachments he made to the leasehold premises. Article 2695 applies "in the absence of contrary agreement." The Code provisions for a lessee's rights concerning improvements to the leasehold premises were slightly different in 1962 under former Civil Code Article 2726, but the freedom of the lessor and lessee to contract around the Civil Code rule applied equally under that provision.[6] See Lighting Fixture Supply Co. v. Pacific Fire Ins. Co. of New York, 176 La. 499, 506-07, 146 So. 35, 37 (1932) ("Article 2726 becomes effective only where a lease is silent as to the improvements placed on the leased premises by the lessee.").

After reviewing the pertinent provisions of the 1962 Lease, it is clear that Beaird owned all of the cranes. The 1962 Lease stipulated that Beaird (lessee) owned all equipment that it had the right to install in the facility while the City only owned equipment that it marked. Beaird was conclusively deemed to own all other equipment in the facility. Section 401(c) of the 1962 Lease addresses equipment furnished by the City. It provides that the City shall lease:

> [a]ll equipment, fixtures, machinery and personal property of every kind and nature whatsoever owned by CITY and placed in, on or about the aforementioned premises and the improvements thereon. In this regard, however, all equipment, fixtures, machinery and other personal property of

---

[6] Former Article 2726 provided: "The lessee has the right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it. But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price." La. Civ. Code art. 2726 (1870).

whatever nature placed in, on or about the aforesaid premises and improvements shall be conclusively deemed to be owned by COMPANY rather than CITY, unless purchased and placed by the CITY and marked by an appropriate tag or other device as being the Property of CITY, and CITY hereby covenants to promptly mark, or cause to be marked, all such equipment, fixtures, machinery and personal property so purchased by the CITY.[7]

Case. No. 15-2536, Record Document 5-3 at 16.

Section 902 of the 1962 Lease provides:

COMPANY shall have the right to add to, alter or improve the Leased Premises and to install thereon machinery, equipment or tools and facilities related thereof. All such additions, alterations or improvements (of any nature or kind and whether or not made with lime or cement and whether or not considered under the laws of the State of Louisiana to be an immovable), together with all machinery equipment or tools, or facilities related thereto, of any nature or kind (whether or not considered under the laws of the State of Louisiana to be an immovable), placed or installed by COMPANY on, or made by COMPANY to, the Leased Premises, shall belong to COMPANY and may, at any time or from time to time, be removed by COMPANY, and at the expiration of this Agreement and Lease, and any extension or renewal thereof, the ownership of such additions, alterations or improvements and machinery, equipment, tools and related facilities (all of which additions, alterations, improvements and machinery, equipment, tools and related facilities shall be hereinafter in this Section called "Property"), shall continue in COMPANY.

Id. at 23.

These express provisions of the 1962 Lease unambiguously provide that any equipment and machinery that were purchased and installed by the lessee were owned

---

[7] The Schoonover Parties argue that this provision would not have included the Cranes because it only pertained to "personal property." See Case No. 15-2534, Record Document 8 at 28-29. However, that argument ignores the plain language that "fixtures" that were not tagged were also conclusively deemed to be owned by Beaird. Fixtures are, by their very definition, items that become permanently attached to and a component part of the building to which they are affixed. The rough equivalent of fixtures in Louisiana parlance is "component parts." See Prytania Park Hotel, Ltd. v. General Star Indem. Co., 179 F.3d 169, 178 (5th Cir. 1999); Service One Cable T.V., Inc. v. Scottsdale Ins. Co., 11-1469 (La. App. 1 Cir. 02/10/12), 2012 WL 602209, *4; La. R.S. 10:9-102(a)(41); Yiannopoulos, 2 La. Civ. L. Treatise, Property, § 7:6 (5th ed. 2017 ("[i]n common law jurisdictions, … fixtures form a category of things that corresponds in part with the continental notion of component parts"). The inclusion of "fixtures" in that list clearly indicates that the provision is not limited simply to "personal property."

by it, and that any machinery or equipment located in the facility provided by the City was conclusively deemed owned by the lessee unless the City promptly tagged or otherwise marked the machinery or equipment to reflect it as property owned by the City. It is undisputed that none of the cranes are tagged or marked as City-owned property. Therefore, Beaird owned the cranes under the 1962 Lease stipulation.

### B. MBI Acquired the Cranes from the Beaird Trustee Sale

The Schoonover Parties argue that MBI never acquired ownership of the cranes from the Beaird Trustee Sale since the bill of sale "only referred to Tangible Personal Property." Case No. 15-2534, Record Document 8 at 29. The Schoonover Parties contend that the cranes "obtained their immovable status well before any argued transfer from the Beaird Trustee to MBI took place;" therefore MBI never actually purchased the cranes. Id. at 29-31. However, under the law in 1962,[8] the cranes were not immovable property at the time of the Beaird Trustee Sale.

Under Louisiana law in effect in 1962-63, immovable property was required to be either (a) immovable by nature or (b) immovable by destination. See La. Civ. Code art. 463 (1870); see also La. Civ. Code art. 464; La. Civ. Code art. 467 (1912). For equipment or other movables to be either an immovable by nature or an immovable by destination,

---

[8] Beaird's ownership rights in the cranes were vested when the cranes were first purchased and installed in the facility. To apply a different rule after the revisions to the Louisiana Civil Code (which occurred in 1978) would potentially divest Beaird of its vested rights, specifically the right of abusus – the right to transfer, lease, and encumber the property. See La. Civ. Code art. 477. This cannot happen for statutory and constitutional reasons. See Church Mut. Ins. Co. v. Dardar, 13-2351 (La. 05/07/14), 145 So.3d 271, 280-81. Substantive laws apply prospectively only. See La. Civ. Code art. 6; see also La. Civ. Code Ann. art. 466 (Acts 2005, No. 301) ("This Act shall apply to existing immovables and shall be used in any determination of whether a thing is a component part, but no provision may be applied to divest already vested rights or to impair obligations of contracts."); see also La. R.S. 1:2. A retroactive application would contravene the Due Process and Contract Clauses of the United States and Louisiana Constitutions. See M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La. 07/01/08), 998 So.2d 16, 29-30; see also Manuel v. Louisiana Sheriff's Risk Mgmt. Fund, 95-406 (La. 11/27/95), 664 So.2d 81, 84.

the equipment or other attachment had to be owned by the same person who owned the building to which the movable became attached, and it had to be installed by the building owner. If a person other than the building owner owned the equipment, then that other person continued to own the equipment regardless of how permanently it became attached to the building, and such equipment would not become an immovable. See La. Civ. Code arts. 467-68, 2726 (1870); Richardson v. Item Co., 172 La. 421, 424-25, 134 So. 380, 381 (1931); Edwards v. S & R. Gas. Co., 73 So.2d 590, 593-94 (La. App. 2 Cir. 1954); Buckley v. Lindsey Mercantile Co., 5 La.App. 467, 469 (La. App. 2 Cir. 1927); see also La. Civ. Code 466, cmts. (b)-(d).

Because the City did not tag or mark the cranes as City-owned, the City and the lessee stipulated in the 1962 Lease that the lessee owned them. See Case No. 15-2536, Record Document 5-3 at 16, 1962 Lease, § 401(c). Thus, under Louisiana law in 1962-63, the cranes could not qualify as either immovables by nature or as immovables by destination because the owner of the buildings (the City) was not the same person as the owner of the cranes (Beaird). All things that the law does not consider as immovable, are movables. See La. Civ. Code art. 475 (1870). Therefore, at the time Beaird acquired ownership of the cranes they were considered movables.[9]

After conversion of the Beaird Bankruptcy, the Beaird Trustee filed the Sale Motion seeking to sell "the Estate's right title, and interest in, to and upon all of the IM&E (inventory, machinery, and equipment)" to MBI. Case No. 15-2536, Record Document 5-3 at 172. The "IM&E" was defined in the Sale Motion as "all the Debtor's movable

---

[9] For these reasons, the Court does not have to apply La. Civ. Code art. 466 as it currently reads to determine MBI's ownership of the cranes. Therefore, in determining MBI's ownership of the cranes, the Bankuptcy Court did not err when it failed to conclusively determine whether the cranes are movable or immovable property and the City and the Schoonover Parties' argument is again unsuccessful.

property." Id. Further, the "Bill of Sale and Security Agreement" with the Beaird Trustee as "Seller" read: "It is acknowledged that by the sale contemplated herein, Seller (Beaird) is simply transferring its own rights and claims in and to the Tangible Personal Property."[10] Id. at 68-70. As discussed supra, Beaird owned the cranes pursuant to the 1962 Lease stipulation and at the time it acquired said ownership the cranes were classified as movable property. Because current Louisiana law cannot deprive an owner of its vested rights, i.e., abusus, the Court is required to review the movability of the cranes under the law in effect at the time Beaird acquired its ownership rights. Therefore, the cranes would be considered movable at the time of the Beaird Trustee Sale. Since Beaird transferred its own rights in its movable property in the Beaird Trustee Sale, MBI rightfully acquired the cranes. The Bankruptcy Court was correct in determining that MBI conclusively owned the cranes.[11]

### C. Louisiana's Public Records Doctrine Does Not Apply

The Schoonover Parties claim that the City and the Schoonover Parties are third parties to the Beaird Trustee Sale. See Case No. 15-2534, Record Document 8 at 30. As such, they claim the Louisiana public records doctrine protects them from any purported

---

[10] The term "tangible personal property" is synonymous with corporeal movable as used in the Louisiana Civil Code. See Willis-Knighton Med. Ctr. v. Caddo Shreveport Sales & Use Tax Comm'n, 2004-0473 (La. 4/1/05), 903 So. 2d 1071, 1078, citing City of New Orleans v. Baumer Foods, Inc., 532 So.2d 1381, 1383 (La.1988); see also Exxon Corp. v. Traigle, 353 So.2d 314, 316-17 (La.App. 1 Cir. 1977), writ denied, 354 So.2d 1385 (La.1978).

[11] MBI did not acquire the Cranes under the 1962 Lease; it acquired them in the Trustee Sale from the party that owned them. Because Beaird had a reasonable time to remove the cranes under the 1962 Lease before they might be deemed abandoned to the City, it could exercise ownership of the cranes within that time. See 1962 Lease § 1505; see also Donnell v. Gray, 215 La. 497, 41 So.2d 66 (1949) (removal of equipment after one year of the abandonment of the lease was not outside a reasonable time to remove equipment under the lease); Standard Oil Co. of La. v. Barlow, 141 La. 52, 52-53, 74 So.627, 627-28 (1917) (eight months was reasonable time to remove equipment under lease provision allowing lessee to remove improvements). It did so by selling the cranes in place to MBI. Therefore, the Schoonover Parties' argument that the separate ownership of the cranes was contingent on the perpetuity of the 1962 Lease is without merit.

transfer of the cranes because the Beaird Trustee Sale was not recorded in the Caddo Parish mortgage and conveyance records.[12] See id. at 32. However, the public records doctrine pertains only to interests in immovable property. See La. Civ. Code art. 3338; see also Cimarex Energy Co. v. Mauboules, 09-1170 (La. 4/9/10), 40 So.3d 931, 943. The only argument provided by the Schoonover Parties in support of their position is "[t]he [c]ranes obtained their immovable status well before any argued transfer from the Beaird Trustee to MBI took place." Case No. 15-2534, Record Document 8 at 31. However, as discussed in detail above, at the time of the Beaird Trustee Sale, the cranes were considered movable property; therefore, the Beaird Trustee Sale did not need to be recorded to have effect against third parties.[13] Accordingly, Louisiana's public records doctrine does not apply in this instance and MBI's acquisition of the cranes pursuant to the Beaird Trustee Sale was perfected.

## CONCLUSION

The 1962 Lease conclusively deemed Beaird as the owner of the cranes at issue in this case. MBI rightfully acquired the cranes pursuant to Beaird Trustee Sale. This

---

[12] The Schoonover Parties also argue the security interests in equipment that MBI granted to the Hallwood Parties have not been properly perfected as UCC fixture filings. See Case No. 15-2534, Record Document 8 at 32. A "fixture" is a "good … that after placement on or incorporation in an immovable has become a component part of such immovable." La. R.S. 10:9-102(a)(41). Even assuming the cranes meet the component part test, the Schoonover Parties argument must fail. La. R.S. 10:9-334 requires a "fixture filing" be filed before the equipment becomes a fixture. The Schoonover Parties argue "the only attempt by the Hallwood Parties to perfect a security interest in the [c]ranes occurred about a half century after the cranes had already become fixtures." Record Document 8 at 32. However, La. R.S. 10:9-334 was not effective until July 1, 2001, nearly 40 years after the cranes were installed. As discussed supra, a law may not retroactively divest vested rights. Applying this provision would deprive the owner of the cranes (installed prior to its enactment) its right to encumber a thing that it owns. See La. Civ. Code art. 477.

[13] The 1962 Lease was recorded. Third persons to conveyances and encumberances of the land and buildings of the facility are charged with knowledge, because of the recorded 1962 Lease, that all unmarked equipment, fixtures, machinery, and all other personal property are not included with the purchase, lease, or mortgage of the land or the buildings.

transaction did not have to be recorded since the cranes were considered movable property. Accordingly, the judgment of the Bankruptcy Court is **AFFIRMED**.

**THUS DONE AND SIGNED** Shreveport, Louisiana, this 23rd day of August, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT